**UNITED STATES of America,**
**Plaintiff,**

v.

**General Manuel A. NORIEGA,**
**Defendant.**

**No. 88–79–CR.**

United States District Court,
S.D. Florida.

March 5, 1999.

Frank A. Rubino, Coconut Grove, FL, Jon A. May, Fort Lauderdale, FL, for defendant Noriega.

Michael Pat Sullivan, Guy A. Lewis, U.S. Attorney's Office, Miami, FL, for plaintiff USA.

## CORRECTED ORDER GRANTING IN PART DEFENDANT'S MOTION FOR REDUCTION OF SENTENCE

HOEVELER, Senior District Judge.

The Defendant, Manuel Noriega, has filed a motion for reduction of his sentence of 40 years imposed on July 10, 1992. A brief history of the events leading to this motion is in order.

On February 4, 1988, the indictment giving birth to this case was filed. It charged a number of individuals with several violations of law, principally drug offenses, including a RICO charge. The Defendant, then the Commanding General of the Panama Defense Force was named as one of the defendants. While the case proceeded as to some defendants, Defendant Noriega was not directly involved until his capture in Panama in late December 1989, incident to the invasion of that country. He was arraigned on January 4, 1990, and has been in custody since that time.

After almost two eventful years of preparation, including a number of guilty pleas by co-defendants and the severed trials of Defendants, William Saldariaga and Brian Davidow. General Noriega, as the only remaining Defendant began trial on September 5, 1991. On April 9, 1992, the jury returned verdicts of guilty as to eight counts of the indictment and not guilty as to two. An appeal followed. The Eleventh Circuit affirmed and, on April 6, 1998, the United States Supreme Court denied certiorari. On August 3, 1998, Defendant's motion for reduction of sentence was timely filed. A hearing on the motion was held on December 8, 1998, at which time the Court heard witnesses and arguments of counsel. Defendant has been in custody a bit more than nine years since his capture and arrest. While he has been classified and treated as a prisoner of war, he is and has been isolated from the other inmates.

Defense counsel urge three basic points which they contend justify a reduction. First, they argue, that even under the "old" law, a forty year sentence for a man in his early sixties (present age 62) is, in effect, a life sentence. While the Defendant is eligible for parole after ten years, counsel argue that the Parole Commission has already indicated that he will be required to serve two-thirds of the sentence (26.6 years). The Government asserts that such a determination has not been made and that Defendant will have a parole hearing early in the year 2000. It is clear, however, that the Parole Commission can keep Defendant confined for two-thirds of his sentence minus earned gain time. Next, Defendant argues that his sentence was excessive when compared to other sentences given to the co-defendants who plead and cooperated. Indeed, he states, some of the "cooperating" co-defendants committed crimes far worse than his. Defendant Noriega conspired by facilitating and profiting; the other Defendants participated in and facilitated the production and delivery of drugs and chemicals. He points out that most of the witnesses who testified for the government, some of whom (such as Max Mermelstein, Floyd Carlton and Steven Kalish) faced very long terms including life imprisonment, are now discharged. Attached to Defendant's motion is a list of witnesses and Defendants who are now out of prison.

Lastly, Defendant argues that his confinement is unduly harsh because he is, in effect, in solitary confinement. While this description is not entirely accurate, it is true that he is isolated from the rest of the inmate population. Records disclose that the education department comes to his cell for training. Meals are brought there also. He can have occasional visits from family and friends. His isolation is not the result of misconduct but rather for his security. He does have access to television and exercise. Thus, while he is not in typical solitary confinement, he is denied in large part, the company of others. There is little question that this is a more difficult ("harder") type of confinement than in general population. For some, the consequences of such deprivation can be serious. See *McClary v. Kelly, etc.*, 4 F.Supp.2d. 195 for a discussion of the ef-

fect of "social isolation" on a prisoner (P. 207)

"a conclusion however, that prolonged isolation from social and environmental stimulation increases the risk of developing mental illness does not strike this court as rocket science. 'Social science and clinical literature have consistently reported that when human beings are subjected to social isolation and reduced environmental stimulation, they may deteriorate mentally and in some cases develop psychiatric disturbances' " (citing cases).

See also The Eighth Amendment and Psychological Implications of Solitary Confinement, *21 Law and Psychology Review, Spring 1997, p. 271;* "Solitary Confinement, Legal and Psychological Considerations" *15 New England Journal on Criminal and Civil Confinement, 301, Summer 1989.*

I hasten to repeat that Defendant is not in typical segregation. While defense counsel argues that Defendant has " . . . served his sentence in virtual solitary confinement," he has some benefits which ameliorate his isolation. Nonetheless, he is largely deprived of the social environment many experts feel is important for mental health. While it is difficult to translate this intangible increment to his sentence into a temporal burden, it is a factor, and perhaps the best of Defendant's arguments in support of his motion for reduction.

At the hearing on Defendant's Motion for New Trial, defense counsel presented Donald Harvey Winters, former CIA Chief in Panama City, Panama. Mr. Winters testified as to his weekly contacts with Defendant and the several ways he assisted the United States.

Matias Firias, a Colonel in the United States Air Force, who worked with the Southern Command in Panama had direct contact with General Noriega and testified that he was the best source of information the United States had in Latin America. Specifically, he referred to Defendant's assistance in Chile, Salvador, the Dominican Republic and Honduras. Arthur J. Davis, former United States Ambassador to Panama, testified that the United States Army Southern Command considered General Noriega an asset and that William Casey of the CIA regarded him as a protégé. Mr. Davis testified that he was never shown any evidence that Defendant was involved in drugs.

Defense counsel further argued, though without evidentiary support, that it was well known that Defendant had been offered the opportunity by the United States to leave Panama and relocate, an offer which Defendant rejected.

Implicit in offering this testimony and argument is the suggestion that the capture and arrest of General Noriega was politically motivated and that such motivation should now be considered in determining a proper sentence. The suggestion must be rejected. The Court chose, both prior to and during the trial not to permit the politics which led to the invasion to become a part of the case. The evidence admitted was within the ambit of the issues presented by the indictment and presumably that election was approved on appeal by the affirmance of the conviction.

### CONCLUSION

I am moved toward reduction principally by two of Defendant's arguments; the nature of the confinement and the considerable disparity between Defendant's sentence and the sentences actually served by his co-conspirators. What the Defendant may have done to the citizens of Panama or to his political opponents are not factors which I can properly consider. He was, as were his co-defendants, charged with specific crimes against the United States and it was for those crimes both he and they were sentenced. Finally, if there was some divine way one could equate the nature of Defendant's confinement to that which would be more normal, I suppose we would find that he has in fact done more time now than the nine years which have passed. By reducing Defendant's sentence, we do not diminish the importance

of the work done by the able prosecutors in this cause, nor lessen the important message that justice is indifferent to position. On the other hand, that same pursuit of justice requires the Court, upon the motion presented, to fully consider the circumstances which bear on the fairness of the sentence imposed. I conclude a reduction is just.

The Defendant's Motion for Reduction of Sentence will be granted in part. His sentence of forty years will be reduced to thirty years and he will, of course, be given credit for the time served thus far.